**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

THE STATE OF WASHINGTON,

    Respondent,

    v.

JIMMY D. RUSSELL,

    Appellant.

No. 86830-6-I

DIVISION ONE

UNPUBLISHED OPINION

  MANN, J. — The State charged Jimmy Russell with two counts of child rape in the first degree and two counts of child molestation in the first degree for acts committed against his niece H.N. A jury found Russell guilty as charged. He appeals and argues that the trial court abused its discretion when it denied his motion for a mistrial after witnesses testified about matters previously excluded. He also argues that the trial court erred in admitting evidence of prior uncharged bad acts. We affirm.

I

  H.N. is Russell's niece. In August 2020, detectives in Montana contacted the Renton Police Department to assist with a sexual assault investigation that was reported to have occurred in Renton. H.N. reported to detectives that she had been sexually abused by Russell for as long as she could remember while they lived in

Renton. Russell lived in a trailer on the same property as H.N. in Renton. H.N. and her family, including Russell, later relocated to Montana.

The State charged Russell with two counts of child rape in the first degree and two counts of child molestation in the first degree. Russell had prior convictions from 2006 of child molestation for molesting his daughter.

Pretrial, the trial court excluded all mentions of Russell's prior convictions and all mentions of any alleged crimes in Montana. During testimony, one witness testified that Russell was not allowed inside the Renton home and that H.N.'s mother was not surprised when she learned of H.N.'s allegations against Russell. After this testimony, Russell unsuccessfully moved for a mistrial, but the court promptly instructed the jury to disregard the improper testimony. Later, during H.N.'s testimony, she mentioned that Russell's abuse continued in Montana. Again, Russell unsuccessfully moved for a mistrial. But the trial court instructed the jury to disregard the testimony.

The trial court also pretrial permitted the State to introduce evidence that Russell had shown H.N. his penis and images of pornography. H.N. then testified to an instance where Russell exposed his penis and showed her pornography.

The jury found Russell guilty as charged. As a persistent offender, Russell was sentenced to life without the possibility of parole.

Russell appeals.

II

Russell argues that the trial court abused its discretion when it denied his motion for a mistrial because serious irregularities deprived him of a fair trial. We disagree.

-2-

A

The trial court pretrial excluded evidence of Russell's prior sex offense convictions in Washington and alleged sex offenses in Montana. Russell cites the following exchange between Russell's sister and the prosecutor:

Q: Did you see [Russell] on the [Renton] property?
A: Yeah. I went out and chatted with him outside by his trailer and talked to him, yeah.
Q: Okay, but he just wouldn't come inside—
A: No
Q: —to speak with you all? Did your mother ever [tell] you if he would come inside the home?
A: No. As far as my mom told me, he was not allowed in the home.

The same witness testified regarding H.N.'s disclosure about the sexual abuse:

Q: And what was [H.N.'s mother's] reaction?
A: There was really no reaction except, okay, I'm not surprised.

At this point, Russell objected and moved to strike. The court sustained the objection, granted the motion to strike, and directed the jury to disregard the answer. Russell then moved for a mistrial. His defense attorney explained:

I wasn't concerned at all previously about her testimony that [Russell] wasn't allowed in the house. That could just be because the house is crowded, no big deal. But now they're going to tie that into why he was not allowed in the house. They're going to tie it to that remark. Not surprised. And just assume he either has a reputation as a pedophile or he has a prior conviction. It was the only two options they'll consider.

After some back and forth, the court and attorneys brought the witness back in for an offer of proof to inquire why H.N.'s mother was not surprised:

Q: . . . [D]o you believe her lack of reaction or lack of surprise was because of [Russell's] prior record?
A: No. I believed it to be [H.N.] orchestrated the whole thing.

The trial court did not rule on the motion for a mistrial and direct examination continued. After the witness finished testifying, the court denied the motion for a mistrial.

Later, during H.N.'s testimony, the State asked about how old she was when some of the sexual molestation happened and H.N. responded, "I don't really remember exactly how old I was. It happened a few times over the course of when I lived in Montana, but again, I don't really remember." After this, defense counsel again objected, which the trial court sustained. Russell again moved for a mistrial. The trial court declined to address the motion for a mistrial and continued with testimony and instructed the jury to disregard H.N.'s statements. The court later denied the motion.

B

We overturn a trial court's decision to deny a motion for a mistrial only when there is a substantial likelihood that the prejudice from the trial irregularities affected the verdict. State v. Gamble, 168 Wn.2d 161, 177, 225 P.3d 973 (2010). To decide whether a trial irregularity was prejudicial, we consider: (1) the seriousness of the irregularity, (2) whether the irregularity involved cumulative evidence, and (3) whether the trial court properly instructed the jury to disregard the irregularity. Gamble, 168 Wn.2d at 177. We evaluate these factors with deference to the trial court "because the trial court is in the best position to discern prejudice." State v. Garcia, 177 Wn. App. 769, 777, 313 P.3d 422 (2013). Lastly, we generally presume jurors follow the trial court's instructions to disregard improper evidence, unless there is evidence on the record to the contrary. State v. Kirkman, 159 Wn.2d 918, 928, 155 P.3d 125 (2007).

Russell agrees that the objections were properly sustained and that the jury was properly instructed to disregard it. But he argues this remedy is insufficient for this type of error because it was concerning a crime similar to the charged offenses.

Russell first relies on State v. Gogo, 29 Wn. App. 2d 107, 115, 540 P.3d 150 (2023). In that case, the defendant was charged with child rape of J.H. and child molestation of T.H. Gogo, 29 Wn. App. 2d at 110-11. Before trial, the court severed the count involving T.H. from the counts surrounding J.H. Gogo, 29 Wn. App. 2d at 111. In the trial involving J.H., the trial court pretrial excluded any statement that the defendant sexually assaulted T.H. Gogo, 29 Wn. App. 2d at 111. Then during trial, J.H.'s grandmother testified that another witness told her that the defendant "had been fooling around with those kids." Gogo, 29 Wn. App. 2d at 112.

Defense counsel did not immediately object but then objected after five more questions and asked to be heard outside the jury's presence. Gogo, 29 Wn. App. at 112. Defense counsel stated that they had a motion, but the court declined to hear it and directed the State to call its next witness. Gogo, 29 Wn. App. 2d at 112. After the testimony of the next witness, the defense moved for a mistrial arguing that the grandmother's testimony about the defendant fooling around with those kids violated the pretrial order. Gogo, 29 Wn. App. 2d at 112-13. The trial court did not rule right away but took the matter under advisement until the parties finished presenting evidence. Gogo, 29 Wn. App. 2d at 113.

The next day, the trial court denied the motion explaining that while the testimony was a serious irregularity in violation of the pretrial ruling, it could be cured with a limiting instruction. Gogo, 29 Wn. App. 2d at 113. The trial court told the parties it

would strike the grandmother's entire testimony and have her retestify, but the parties disagreed and instead stipulated to facts that would have been elicited by her testimony. Gogo, 29 Wn. App. 2d at 113. At the conclusion of the State's case, two days after the grandmother's testimony, the trial court instructed the jury to strike the grandmother's testimony from the record "because in part it was appreciably and unfairly defective and hindered by her inability to clearly hear the prosecutor's questions." Gogo, 29 Wn. App. 2d at 113.

On appeal, this court held that the trial court abused its discretion by denying the defendant's motion for a mistrial. Gogo, 29 Wn. App. 2d at 119. The court explained that the jury was not promptly instructed to disregard, so the potential prejudice was exacerbated because the jury was allowed to go home and consider the improper testimony overnight. Gogo, 29 Wn. App. 2d at 116. Accordingly, this court concluded that it was "reasonable to assume that during this multiday delay, the improper testimony would have made such an indelible impression on the jury that no instruction to disregard it could mitigate its prejudicial effect." Gogo, 29 Wn. App. 2d at 116.

This case is distinguishable. First, unlike in Gogo, where the trial court did not attempt to cure the error until two days after the grandmother's testimony, the trial court's curative instruction here occurred either immediately after or soon after the alleged error, and before other witnesses testified or an overnight recess occurred. And second, the trial court's instructions informed the jury that they must disregard the stricken comments.

Russell also relies on State v. Babcock, 145 Wn. App. 157, 185 P.3d 1213 (2008). There, the defendant was charged with sexually abusing M.B. and A.T. Babcock, 145 Wn. App at 158. After the trial court determined that five-year-old A.T. was competent to testify, it allowed the State to introduce hearsay statements of A.T. through five witnesses, including the investigating police officer and a social worker. Babcock, 145 Wn. App. at 161-62. When the State later called A.T., she refused to testify. Babcock, 145 Wn. App. at 162. Because there was no corroboration of A.T.'s previously admitted hearsay statements, the trial court ruled them inadmissible and dismissed the charges as they related to A.T. Babcock, 145 Wn. App. at 162. The trial court issued a cautionary instruction to the jury instructing them not to consider the hearsay statements, but refused to grant a mistrial. Babcock, 145 Wn. App. at 162.

This court reversed, finding that A.T.'s hearsay statements essentially became "the admission of evidence of other bad acts." Babcock, 145 Wn. App. at 164. Thus, we viewed it as an "extremely serious" irregularity because the disclosure of a second victim abused under similar circumstances carries "a high potential for prejudice." Babcock, 145 Wn. App. at 164. The court explained:

> Here, there was no physical evidence or eyewitness testimony corroborating the allegations concerning either AT or MB. The verdict depended solely on the jury's credibility determinations about MB's testimony. And, that testimony was at times inconsistent. Consequently, testimony at trial that AT had also been abused, and under circumstances somewhat similar to those involving MB, had a high potential for prejudice, and represents a serious irregularity.

Babcock, 145 Wn. App. at 164.

This court also determined that the evidence that Babcock molested A.T. was not cumulative evidence concerning the rape and harassment of M.B. because they were

entirely separate incidents. Because the evidence was not cumulative, admission of the statements "weighs in favor of a mistrial." Babcock, 145 Wn. App. at 164.

Finally, while the trial court properly instructed the jury to disregard the testimony after the charges related to A.T. were dismissed, this court held that the admission of similar misconduct was considered so prejudicial that "[t]here is no guarantee that the jury could effectively disregard that evidence." Babcock, 145 Wn. App. at 164-65.

But here, unlike Babcock, the jury did not hear evidence from a different victim of a similar crime. And more importantly, the jury did not hear evidence from multiple witnesses only to be instructed to disregard those statements after A.T. decided not to testify. Instead, the trial court's curative instruction occurred during or just after the improper testimony, and before other witnesses testified or an overnight recess occurred. Thus, the risk that the jury would not follow the court's instruction to disregard the testimony is minimal.

Russell lastly relies on State v. Escalona, 49 Wn. App. 251, 742 P.2d 190 (1987). In that case, the defendant was charged with second degree assault with a deadly weapon, a knife. Escalona, 49 Wn. App. at 252. The defendant had previously been convicted of an identical crime, and the court pretrial excluded any reference to the earlier conviction. Escalona, 49 Wn. App. at 252. But, at trial, the State's key witness testified that the defendant "already has a record and had stabbed someone." Escalona, 49 Wn. App. at 253. The trial court sustained the defendant's objection and instructed the jury to disregard the testimony but denied a mistrial. Escalona, 49 Wn. App. at 253.

On appeal, the court reversed the denial of the mistrial reasoning that the "evidence of Escalona's prior conviction for having 'stabbed someone'" was inherently prejudicial. Escalona, 49 Wn. App. at 255-56. The court explained:

> The information imparted by the statement was also of a nature likely to "impress itself upon the minds of the jurors" since Escalona's prior conduct, although not "legally relevant," appears to be "logically relevant." As such, despite the court's admonition, it would be extremely difficult, if not impossible, in this close case for the jury to ignore this seemingly relevant fact. Furthermore, the jury undoubtedly would use it for its most improper purpose, that is, to conclude that Escalona acted on this occasion in conformity with the assaultive character he demonstrated in the past.

Escalona, 49 Wn. App. at 256 (citations omitted) (quoting State v. Miles, 73 Wn.2d 67, 71, 436 P.2d 198 (1968); State v. Holmes, 43 Wn. App. 397, 399-400, 717 P.2d 766 (1986)).

But Escalona recognized that "[e]ach case must rest upon its own facts." Escalona, 49 Wn. App. at 256. In Escalona, the improper testimony involved the jury learning that Escalona had been convicted of assaulting a different victim in a similar manner. Here, in contrast, H.N.'s improper testimony that similar acts occurred in Montana, while prejudicial, did not rise to the same level of prejudice as testimony of a prior conviction and thus was more likely cured by the trial court's timely admonition to the jury not to consider the testimony.

Relating to the instances that Russell was not allowed in the house and that H.N.'s mother was not surprised, this is already an attenuated assumption that the jury would have to make. The witness did not testify that H.N.'s mother was not surprised because there were prior convictions. Instead, the witness only made a vague comment that H.N.'s mother was not surprised, which could be for several reasons.

And the witness actually clarified during the offer of proof that she was not surprised because they believed H.N. fabricated the allegations. A jury would unlikely connect the dots that Russell was not allowed in the house because he had prior convictions of sexual assault and that H.N.'s mother was not surprised because he had prior convictions.

Third, the trial court promptly instructed the jury to disregard these comments. Unlike Gogo, the jury did not go home overnight and think about any of the improper comments. Rather, the trial court promptly instructed the jury to disregard the statements. And this court presumes that juries heed instructions absent evidence to the contrary.

For those reasons, the trial court did not abuse its discretion when it denied Russell's motion for a mistrial.

III

Russell next argues the trial court abused its discretion by admitting two incidents of prior uncharged bad acts: Russell's possession of child pornography and his indecent exposure of his genitals. Although the trial court erred by not conducting an ER 404(b) analysis on the record, the error was harmless.

A

The State moved in limine to admit evidence that Russell had exposed his penis to H.N. and showed her pornography. Russell objected, arguing that it was prejudicial and overwhelmed any probative value. The court granted the State's motion but did not conduct an ER 404(b) analysis and presumably accepted the State's argument that this evidence was res gestae.

When asked about the time Russell pulled his pants down, H.N. testified:

We were both in my room.  I don't remember why exactly, but he was like hey, you wanna see something, and I was like sure, whatever, and he pulled—he like unbuttoned his pants and pulled them down a little bit, and then he pulled his underwear down, and he took his penis and he just kind of like held it there and like, I don't know, moved it around a little bit and asked something like . . . how does it look or like do you like how it looks or something like that.

H.N. also testified that Russell sometimes showed her pornographic images:

Q:  What kind of pictures was he showing you?
A:  They were usually pornographic in a way.  Sometimes like animated. Other times it was like actual people.
Q:  And what were the people doing in the pictures?
A:  Usually having sex of some kind.
Q:  And what kind of people were in the pictures?
A:  It ranged.  It was usually one girl and a guy, and the girl usually ranged in age from like, sometimes she looked like as young as eight or nine, and other times as old as like maybe twenty, but it was usually somewhere within those age ranges and it was usually, again, an adult male and then a younger girl.
Q:  And what were they doing in the picture?
A:  Having sex.  Sometimes he would be putting his penis in her vagina. Sometimes she would be putting it in her mouth or in other forms of that.

When asked about when he would show the photos, she responded, "sometimes it was just like when were alone together" and then she described one specific instance she remembered when Russell was scrolling through photos and then scrolled past those images.

B

We review a trial court's decision to admit evidence under ER 404(b) using an abuse of discretion standard.  State v. Wilson, 144 Wn. App. 166, 177, 181 P.3d 887 (2008).  "Discretion is abused when the trial court's decision is manifestly unreasonable,

or is exercised on untenable grounds, or for untenable reasons." State v. Blackwell, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993).

ER 404(b) provides in full:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The burden to prove the evidence is admissible under ER 404(b) is the proponent of the evidence. State v. Gresham, 173 Wn.2d 405, 420, 269 P.3d 207 (2012). Washington courts have developed an analytical framework to determine whether evidence is admissible under 404(b):

[T]he trial court must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect.

Gresham, 173 Wn.2d at 421 (quoting State v. Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)). The trial court must conduct the ER 404(b) analysis on the record. State v. Foxhoven, 161 Wn.2d 168, 175, 163 P.3d 786 (2007). In assessing the admission of evidence, "we consider bases mentioned by the trial court as well as other proper bases on which the trial court's admission of evidence may be sustained." State v. Powell, 126 Wn.2d 244, 259, 893 P.2d 615 (1995).

Here, the trial court did not conduct any analysis on the record as to whether the evidence was admissible under ER 404(b). The trial court heard arguments as to the prejudicial and probative value evidence, but it did not conduct the four-step analysis. Thus, the trial court erred by failing to conduct the analysis. Such an evidentiary error is

harmless when the evidence is admissible for a proper purpose. State v. Sublett, 156 Wn. App. 160, 196, 231 P.3d 231 (2010) (holding that the trial court's failure to conduct an ER 404(b) analysis was harmless when the evidence was admissible under the res gestae exception). We may uphold the admission of ER 404(b) evidence on any ground that the record supports, "consider[ing] bases mentioned by the trial court as well as other proper bases on which the trial court's admission of evidence may be sustained." State v. Powell, 126 Wn.2d 244, 259, 893 P.2d 615 (1995).

In State v. Crossguns, 199 Wn.2d 282, 505 P.3d 529 (2022), the State charged the defendant with rape of a child in the second degree and child molestation in the second degree of his minor daughter R.G.M. Pretrial, the State moved to admit evidence of prior uncharged sexual abuse of R.G.M. by the defendant. Crossguns, 199 Wn.2d at 287. The trial court admitted the evidence primarily to prove that the defendant had a lustful disposition toward R.G.M. Crossguns, 199 Wn.2d at 287.

Our Supreme Court analyzed whether lustful disposition was still "a distinct proper purpose for admitting evidence under ER 404(b)" holding:

> the term "lustful disposition" must be rejected and . . . it may no longer be cited as a distinct purpose for admitting evidence under ER 404(b). However, we do not disturb our precedent permitting evidence of collateral misconduct relating to a specific victim for appropriate purposes under ER 404(b), including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Crossguns, 199 Wn.2d at 290 (emphasis added). The court further explained, "due to the nature of the crimes of rape and of child sexual abuse, the evidence of other uncharged sexual misconduct may be admissible as part of the crime itself in appropriate cases." Crossguns, 199 Wn.2d at 294. According to the court, "'lustful

-13-

disposition' is more akin to a permissible showing of intent, motive, opportunity, common scheme or plan, preparation, and absence of accident or mistake." Crossguns, 199 Wn.2d at 293.

Here, like Crossguns, the ER 404(b) evidence concerned other uncharged sexual misconduct between the defendant and victim. The evidence was admissible to show intent, preparation, motive, or absence of mistake. The State's theory was that Russell showed H.N. pornography and the indecent exposure to prime her for the sexual molestation. Therefore, this evidence was admissible and relevant under Crossguns.

Additionally, any failure to conduct the ER 404(b) analysis was harmless because there is not a reasonable probability that it affected the verdict. State v. Gunderson, 181 Wn.2d 916, 926, 337 P.3d 1090 (2014) (outlining nonconstitutional harmless error standard for ER 404(b) evidence). The evidence of other prior acts came through H.N.'s testimony. There was no other evidence admitted. For example, there was no evidence admitted of the pornographic images that Russell showed H.N. It was only her testimony that described images of the pornography. But the jury heard testimony that Russell repeatedly sexually abused H.N. over the course of years. So the fact that H.N. testified that Russell had images on his phone of child pornography does not necessarily make her other testimony that Russell raped her more or less credible. Similarly, it is unlikely that H.N.'s testimony about his indecent exposure materially affected the verdict. Therefore, because the evidence would be admissible under Crossguns and any failure to conduct the ER 404(b) analysis was harmless, we decline to reverse on this basis.

-14-

We affirm.

_Mann, J._

WE CONCUR:

_Birk, J._          _Coburn, J._